**Nos. 23-15900, 23-15901**
_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT
_____

**ALLIANCE FOR FAIR BOARD RECRUITMENT,**

*Plaintiff-Appellee/Plaintiff-Appellant,*

*v.*

**SHIRLEY WEBER, in her official capacity as Secretary of State of the State of California,**

*Defendant-Appellant/Defendant-Appellee.*
_____

On Appeal from the United States District Court
for the Eastern District of California
Case No. 2:21-cv-01951-JAM-AC
_____

**APPELLANT'S MOTION TO LIFT THE STAYS**
_____

Jonathan Berry
R. Trent McCotter
Michael Buschbacher
   *Counsel of Record*
Jared Kelson
Andrew W. Smith
BOYDEN GRAY PLLC
801 17th Street NW, Suite 350
Washington, DC 20006
202-955-0620
mbuschbacher@boydengray.com
*Counsel for Alliance for Fair Board Recruitment*

## INTRODUCTION

California's SB 826 requires all publicly traded companies headquartered in that state to have a certain minimum number of women on their corporate boards. This violates the U.S. Constitution's Equal Protection Clause by discriminating on the basis of sex. The district court erroneously concluded otherwise, holding that Plaintiff Alliance for Fair Board Recruitment's challenge to this law failed to even state a claim.

The Alliance timely appealed, but this appeal was stayed shortly thereafter pending the resolution of a state court case, *which now itself has been stayed* pending the resolution of a *different* state court case, which turns on issues that have no relevance here. The order on this Court's docket provides no hint as to what legal principles prompted the stay, but, at this point, no abstention doctrine can justify further delay in the adjudication of this appeal. As explained below, the stays in this case and California's parallel appeal fail to satisfy the requirements of *Pullman* abstention, the *Colorado River* doctrine, or the principles that guide

1

a court's inherent authority to manage its own docket. The stays should be lifted.

## BACKGROUND

In September 2018, then-California Governor Brown signed SB 826 into law. That statute enacted a "woman quota" for public corporations headquartered in California, requiring that women hold a certain fraction of the company's board seats. Cal. Corp. Code § 301.3. In September 2020, Governor Newsom signed AB 979 into law, which added a "minority quota" to this program. For public corporations based in California, a certain number of board seats must be held by directors from an "underrepresented community." Cal. Corp. Code § 301.4.

In July 2021, the Alliance filed a complaint challenging those laws on behalf of its members, which include persons who are seeking appointment as corporate directors with California-based companies but who do not fit California's favored race and sex categories. The complaint sought both declaratory and injunctive relief and claimed that those laws on their face violated the Equal Protection Clause of the U.S. Constitution and the constitutional internal affairs doctrine, which prohibits states

from interfering with the internal affairs of corporations organized under the laws of a different state.

Prior to the Alliance filing its federal suit, some taxpayers in the state of California had already filed two different suits in California state court. The first case challenged SB 826, the "woman quota." *Crest v. Padilla* ("*Crest I*"), No. 19-STCV-27561 (Cal. Super. Ct. L.A. Cnty. May 13, 2022). The second challenged AB 979, the "minority quota." *Crest v. Padilla* ("*Crest II*"), No. 20-STCV-37513 (Cal. Super. Ct. L.A. Cnty. Apr. 1, 2022). In both lawsuits, the plaintiffs claimed only that the laws violated the California state Constitution's guarantees of equal protection.

In the spring of 2022, the California Superior Court ruled in the *Crest* cases that both AB 979 and SB 826 violated the California Constitution. The court enjoined the enforcement of both laws. *Crest I*, slip op. at 23; *Crest II*, slip op. at 23. The Attorney General of California appealed both rulings to the California Court of Appeals.

Meanwhile, the federal court litigation in this case reached judgment in 2023. In January 2022, the district court dismissed the Alliance's internal affairs claim and its equal protection challenge to SB 826's "woman quota" without an opinion. In May 2023, the district court

3

granted summary judgment to the Alliance on its challenge to AB 979, concluding that the "minority quota" creates a racial quota system that is per se unconstitutional, violating both the Equal Protection Clause and the Civil Rights Act of 1866. *All. For Fair Bd. Recruitment v. Weber*, No. 2:21-cv-01951, 2023 WL 3481146 (E.D. Cal. May 15, 2023).

These timely appeals followed, both of which this Court stayed on July 17, 2023. In full, the explanation reads:

> Briefing in these cross-appeals is stayed pending the appeals of the decisions in *Crest v. Padilla*, Case No. 19STCV27561 (Los Angeles Super. Ct.), and *Crest et al. v. Padilla*, Case No. 20STCV37513 (Los Angeles Super. Ct.). The parties must file a written status report by October 16, 2023[,] and every 90 days thereafter while the appeals remain pending in state court. Within 21 days after resolution of the appeals, the parties must notify the court and file a motion for appropriate relief.

Docket Entry 14.

After the stays were ordered, the *Crest* litigation itself was also stayed in the California Court of Appeals. On August 31, 2023, the California Court of Appeals granted the California Attorney General's motion to hold the *Crest* appeals in abeyance pending the decision of the California Supreme Court in *Taking Offense v. State of California*, No. S270535 (Cal. Petition for Review granted Nov. 10, 2021). *See Padilla v. Crest*,

4

B322276 (Cal. 2nd Ct. App. Stay Order filed Aug. 31, 2023); *Padilla v. Crest*, B321726 (Cal. 2nd Ct. App. Stay Order filed Aug. 31, 2023). *Taking Offense* does not involve any questions about SB 826, AB 979, or equal protection law. Instead, *Taking Offense* presents a question of taxpayer standing in California state courts, an issue that is relevant to whether the plaintiffs in *Crest* have standing, and a First Amendment question. Neither aspect of that case has any relevance here.

## ANALYSIS

Federal courts are under a "virtually unflagging obligation" to "exercise the jurisdiction given to them." *Colorado River Water Conserv. Dist. v. United States*, 424 U.S. 800, 817 (1976). In the absence of any "exceptional" circumstances that trigger an abstention doctrine, then, this case must go forward. *Id.* at 818. The order staying the Alliance's appeal provides no explanation as to what exceptional circumstances might justify the delay in vindicating the constitutional rights at stake here. Nor, in any event, could such a justification be established now. As explained below, neither *Pullman* abstention, the *Colorado River* doctrine, nor the court's inherent authority to manage its own docket provide

5

a defensible rationale for further staying this appeal. Accordingly, the stay must be lifted.

## I.  *PULLMAN* ABSTENTION DOES NOT APPLY.

The *Pullman* abstention doctrine exists to "avoid federal-court error in deciding state-law questions antecedent to federal constitutional issues." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 76 (1997). It represents "an extraordinary and narrow exception to the duty of" a federal court "to adjudicate a controversy that is properly before it." *Porter v. Jones*, 319 F.3d 483, 492 (9th Cir. 2003) (cleaned up).

Three questions guide this doctrine's application. First, are there "sensitive issues of social policy upon which the federal courts ought not to enter unless no alternative to its adjudication is open"? *Wolfson v. Brammer*, 616 F.3d 1045, 1066 (9th Cir. 2010) (cleaned up). Second, could "constitutional adjudication … be avoided by a state ruling"? *Id.* Third, is the "resolution of the state law issue … uncertain"? *Id.* If the answer to any of those questions is "no," *Pullman* abstention does not apply. *See Porter*, 319 F.3d at 492. And even if all three necessary factors are satisfied, courts still have discretion to permit the federal case to go forward.

*See C-Y Dev. Co. v. City of Redlands*, 703 F.2d 375, 377 (9th Cir. 1983). The stay in this case fails multiple prongs simultaneously.

Start with the second question. The state court ruling that this case is currently waiting on will not help this Court avoid constitutional adjudication. The "paradigm" case where abstention is appropriate "is a case where the challenged state statute is susceptible of a construction by the state judiciary" that would avoid the need to wade into constitutional waters. *Kusper v. Pontikes*, 414 U.S. 51, 54 (1973). Put differently, it focuses on cases where the state court's statutory interpretation might narrow the reach of the statute. Recall that the *Crest* litigation only involves claims that the statutes violate the California Constitution's guarantee of equal protection by imposing race and sex quotas without satisfying the relevant heightened scrutiny analysis employed by California state courts. Nobody argues that the state courts will construe the statute in a way that could eliminate the *federal* equal protection problems. The statutes are unambiguous in that regard.

And federal courts cannot pause their cases for the purpose of letting state courts take the first stab at similar constitutional analysis under similar state constitutional provisions. This Court and the Supreme

7

Court have made that much clear. *See, e.g.*, *Pue v. Sillas*, 632 F.2d 74, 79–80 (9th Cir. 1980); *Hawaii Hous. Auth. v. Midkiff*, 467 U.S. 229, 237 n.4 (1984) ("The Court has previously determined that abstention is not required for interpretation of parallel state constitutional provisions."). After all, for generic state constitutional provisions that mirror federal constitutional provisions, the interpretation of the state provision "neither logically precedes nor governs the federal question." *Pue*, 632 F.2d at 81. And "to hold that abstention is required because [the state statute] might conflict with [the state constitution's] broad and sweeping constitutional provisions, would convert abstention from an exception into a general rule." *Examining Bd. of Eng'rs, Architects & Surveyors v. Flores de Otero*, 426 U.S. 572, 598 (1976).

That principle rules out *Pullman* abstention here. California's equal protection clauses, at issue in *Crest*, are "substantially similar to the federal provision that is the basis of the federal challenge." 17A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 4242 (3d ed.). Indeed, this Court has already held that *Pullman* abstention is inappropriate when the state court case would construe California's due process clause. *See Pue*, 632 F.2d at 79–81. It should now

8

likewise recognize that abstention is not appropriate when it would serve only to let California courts construe California's equal protection guarantees.

What is more, abstention rarely makes sense in a case like this one, where the plaintiff has brought a facial constitutional challenge. The "pivotal question in determining whether abstention is appropriate is whether *the statute* is 'fairly subject to an interpretation which will render unnecessary or substantially modify the federal constitutional question.'" *City of Houston v. Hill*, 482 U.S. 451, 468 (1987) (emphasis added). Because a facial challenge by definition asks whether the statute is unconstitutional in *all* of its applications, a state court decision that narrows the reach of the statute and thus reduces some of the troublesome applications likely does not change the federal constitutional analysis. Accordingly, the second factor "frequently" cannot be satisfied when the federal case involves a facial challenge "because a constitutional determination is generally required to assess a frontal attack upon a statute." *Porter*, 319 F.3d at 493 n.9.

Putting both pieces together, the state court in *Crest* will not be offering a narrowing interpretation of the statute (because it is only

hearing a state constitutional challenge), and for this case, a narrower interpretation of the statute would likely not even avoid the need for a constitutional analysis (because the plaintiffs here bring a facial challenge). As a result, the second factor cannot be satisfied.

Moreover, the answer to the first question independently precludes abstention. A case that presents a facial challenge to a state law and alleges a violation of civil rights is one where federal courts belong, not one that they should try to avoid entering. Though there is no *per se* rule that civil rights claims must be heard, this Court has rightly explained that "[f]ederal courts should be reluctant to abstain in civil rights cases." *Pearl Inv. Co. v. City and Cnty. of San Francisco*, 774 F.2d 1460, 1463 (9th Cir. 1985); *see also C-Y Dev. Co.*, 703 F.2d at 381. That is especially so when, as here, the state is engaging in the most flagrant of equal protection violations—imposing outright race and sex quotas. Because the Alliance, on behalf of its members, "claimed impairment of the fundamental civil rights of a broad class of citizens," the "importance and immediacy of the

problem" suggests that this is the kind of case that federal courts should hear now. *Harman v. Forssenius*, 380 U.S. 528, 537 (1965).

Finally, even if the stay in this case could satisfy the three mandatory elements of the doctrine, an important discretionary factor tips the scales in favor of letting the case go forward anyway. The "delay that abstention will cause," when significant, "is a factor arguing against abstention." 17A Wright & Miller, *supra*, § 4242. And given new developments since the stay was initially entered in this case, the risk of delay counsels even more strongly in favor of letting these appeals proceed. Namely, the state court cases that prompted the stay of this case have themselves been stayed. Under the current stay, vindication of the Alliance's members' constitutional rights must await the resolution of a California Supreme Court decision that lacks any relevance to their case, a California Court of Appeals decision that they are not a party to, and the eventual appeal from that decision back to the California Supreme Court. It's not hard to imagine that all of this could last years.

To be sure, this Court has noted that when pending litigation in state court presents relevant antecedent state law questions, the risk of delay is lower. *See Almodovar v. Reiner*, 832 F.2d 1138, 1140 (9th Cir.

1987). But that general rule can no longer support a stay here because the related state cases are themselves now stayed pending a case that has no relevance here.

\* \* \*

If this Court's current stay rests on *Pullman* abstention, there is no basis for the stay to continue.

## II. THE *COLORADO RIVER* DOCTRINE DOES NOT APPLY.

The *Colorado River* doctrine provides a limited exception to the general rule that "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court." *Colorado River*, 424 U.S. at 817. This narrow doctrine rests on "considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Id.* (cleaned up). To determine whether a *Colorado River* stay is justified, the court must weigh and balance eight different factors. *Ernest Bock, LLC v. Steelman*, 76 F.4th 827, 836 (9th Cir. 2023) (listing the factors).

But crucially, a "threshold requirement" for staying a case under *Colorado River* is that the federal case and the state case must be "parallel." *Id.* at 838. This follows from the Supreme Court's instruction that

"it would be a serious abuse of discretion to grant the stay" if the "parallel state-court litigation" cannot be an "adequate vehicle for the complete and prompt resolution of the issues between the parties." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983). Though this does not require the two cases to share an "exact parallelism," they must be similar enough that the federal court knows that by letting the state case go forward, the federal court "will have nothing further to do in resolving any substantive part of the case." *Ernest Bock*, 76 F.4th at 838 (quoting *Moses H. Cone*, 460 U.S. at 28).

This Court has recently explained that a federal case is not parallel to a state case "when the state court proceedings will fully resolve the federal case *only if* the state court rules" a certain way. *Ernest Bock*, 76 F.4th at 838; *see id.* at 841. Even "substantial doubt" about whether the federal case will need to continue after the state case reaches an answer "*precludes* a stay." *Id.* at 839. And in that circumstance, it does not even matter if the other factors point towards a stay making prudential sense—no *Colorado River* stay can issue. *Id.* at 842.

That principle rules out a *Colorado River* stay here. The *Crest* litigation could resolve these cases only if its final judgment after all appeals

13

universally enjoins the state of California from enforcing SB 826 and AB 979 in their entirety. Any other outcome would mean that the *Crest* litigation failed to resolve these claims because the members of the Alliance would then have an opportunity to push their federal constitutional claims at that point—in other words, their case would not bee moot.

There is at least "substantial doubt" about this outcome. As the recent stay in the *Crest* cases indicates, the ultimate outcome of that litigation turns not only on the merits of the California constitutional arguments, but on the scope of taxpayer standing under California law, an issue that is of no relevance here and, as the stay in *Crest* suggests, is not settled.

At the very least, the stay of the *Crest* cases means that those appeals are no longer an "adequate vehicle for the complete and prompt resolution of the issues between the parties" to this case. *Moses H. Cone*, 460 U.S. at 28. The stays here should thus be lifted.

### III. THIS COURT'S INHERENT DOCKET-MANAGEMENT AUTHORITY DOES NOT JUSTIFY THIS STAY.

The Supreme Court noted in *Landis v. North American Co.* that "inherent in every court" is the power "to control the disposition of the

causes on its docket with economy of time and effort." 299 U.S. 248, 254 (1936).

But this Court has clarified that this background docket-management authority does not give courts the power to make an end-run around the limitations of other carefully constructed doctrines that lay out when courts may stay cases pending relevant state court litigation. Specifically, when a case "involves simultaneous and related federal and state actions, the proper analysis is under *Colorado River*, not *Landis*." *Ernest Bock*, 76 F.4th at 842. That makes perfect sense, as expanding "the scope of permissible stays beyond" what the more specific doctrines permit "would undermine" those doctrines. *Id.* (cleaned up).

In short, if neither *Colorado River* nor *Pullman* abstention can justify a stay to permit state court litigation to resolve issues related to this case, then this Court must meet its "virtually unflagging obligation" to exercise its jurisdiction over these appeals. *Colorado River*, 424 U.S. at 817.

Further, even if *Landis* did apply here, a continued stay is unwarranted given the extensive delay the Alliance now faces, coupled with the lack of meaningful benefit from waiting, as explained above.

15

## CONCLUSION

For these reasons, the Court should lift its stays and permit these appeals to go forward.

November 13, 2023

Respectfully submitted,

/s/ Michael Buschbacher
Jonathan Berry
R. Trent McCotter
Michael Buschbacher
   *Counsel of Record*
Jared Kelson
Andrew Smith
BOYDEN GRAY PLLC
801 17th Street NW, Suite 350
Washington, DC 20006
202-955-0620
mbuschbacher@boydengray.com
*Counsel for Alliance for Fair Board Recruitment*

# CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 27(d)(2) because it contains 3,017 words, excluding the portions exempted by Rule 27(a)(2)(B). This brief complies with the typeface and type style requirements of Federal Rule of Appellate Procedure Rule 32(a)(5)–(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook and 14-point font.

November 13, 2023  /s/ Michael Buschbacher
BOYDEN GRAY PLLC
801 17th Street NW, Suite 350
Washington, DC 20006
202-955-0620

# CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who have consented to electronic service are being served today with a copy of this document via the Court's CM/ECF. All parties in this case are represented by counsel consenting to electronic service.

November 13, 2023        /s/ Michael Buschbacher
                         BOYDEN GRAY PLLC
                         801 17th Street NW, Suite 350
                         Washington, DC 20006
                         202-955-0620