**Nos. 23-15900, 23-15901**

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

**ALLIANCE FOR FAIR BOARD RECRUITMENT,**

*Plaintiff-Appellee/Plaintiff-Appellant,*

*v.*

**SHIRLEY WEBER, in her official capacity as Secretary of State
of the State of California,**

*Defendant-Appellant/Defendant-Appellee.*

On Appeal from the United States District Court
for the Eastern District of California
Case No. 2:21-cv-01951-JAM-AC

**APPELLANT'S MOTION FOR RECONSIDERATION AND FOR
REFERRAL TO THE APPELLATE COMMISSIONER OR
A MOTIONS PANEL**

Jonathan Berry
R. Trent McCotter
Michael Buschbacher
  *Counsel of Record*
Andrew W. Smith
BOYDEN GRAY PLLC
801 17th Street NW, Suite 350
Washington, DC 20006
202-955-0620
mbuschbacher@boydengray.com
*Counsel for Alliance for Fair
Board Recruitment*

## **INTRODUCTION**

Faced with strong arguments that two of its laws violate the U.S. Constitution, the State of California has turned to the oldest strategy in the book—delay, delay, delay.

The Clerk of Court erred by denying the Alliance for Fair Board Recruitment's motion to lift the stays in these cases. The Alliance argued that because these cases were stayed pending separate state court litigation that now *itself has been stayed* pending the resolution of a *different* state court case about standing under California law, the stays here are no longer justified. The Clerk's order denied that motion. The only reason given for denial was that two other *federal cases* raise similar questions, and they too are stayed pending the years-long maze that awaits the separate litigation in state court.

This house of cards falls under its own weight. Indeed, we are unaware of any case upholding a "double stay" like the one now imposed here. California concedes that stays are appropriate only if "extraordinary" circumstances satisfy the requirements for abstention, but neither *Pullman* abstention nor the *Colorado River* doctrine (the only two relevant abstention doctrines) justify staying these cases pending the state-court

1

litigation. Likewise, the Clerk of Court abused this Court's authority to manage its own docket by declining to lift the stays here, citing only the fact that other federal cases are also stayed pending state-court litigation. And that justification has now evaporated, as the plaintiffs in the two cases cited by the Clerk have filed their own motions to lift their stays. *See Meland v. Weber*, No. 22-15149 (9th Cir. Dec. 13, 2023), ECF No. 69; *NCPPR v. Weber*, No. 22-15822 (9th Cir. Dec. 13, 2023), ECF No. 70.

Thus, the stays here must be lifted. The Alliance moves for reconsideration and referral of the issue to the Appellate Commissioner or to a motions panel. *See* Ninth Circuit Rule 27-10(b) (Orders Issued Under Circuit Rule 27-7).

## **BACKGROUND**

In September 2018, then-California Governor Brown signed SB 826 into law. That statute enacted a "woman quota" for public corporations headquartered in California, requiring that women hold a certain number of a company's board seats. Cal. Corp. Code § 301.3. In September 2020, Governor Newsom signed AB 979 into law, which added a "minority quota" to this program. For public corporations headquartered in

California, a certain number of board seats must be held by directors from an "underrepresented community." *Id.* § 301.4. A director who satisfies that requirement includes a person "who self-identifies," among other things, "as Black, African American, Hispanic, Latino, Asian, Pacific Islander, Native American, Native Hawaiian, or Alaska Native." *Id.* § 301.4(e)(1).

In July 2021, the Alliance filed a complaint challenging SB 826 and AB 979 on behalf of its members, which include persons who seek appointment as corporate directors with California-based companies but who do not fit California's favored race and sex categories. The complaint sought both declaratory and injunctive relief, arguing that those laws on their face violate the Equal Protection Clause of the U.S. Constitution and the constitutional internal affairs doctrine, which prohibits states from interfering with the internal affairs of corporations organized under the laws of a different state. The complaint also claimed that AB 979 violated the Civil Rights Act of 1866.

Prior to the Alliance filing its federal suit, certain taxpayers in the state of California had already filed two different suits in California state court. The first suit challenged SB 826. *Crest v. Padilla* ("*Crest I*"), No.

19-STCV-27561 (Cal. Super. Ct. L.A. Cnty. May 13, 2022). The second challenged AB 979. *Crest v. Padilla* ("*Crest II*"), No. 20-STCV-37513 (Cal. Super. Ct. L.A. Cnty. Apr. 1, 2022). In both cases, the plaintiffs claimed only that the laws violated the California state constitution's guarantees of equal protection.

In the spring of 2022, the California Superior Court ruled in *Crest I* and *Crest II* that SB 826 and AB 979 both violate the California constitution. The court enjoined the enforcement of both laws. *Crest I*, slip op. at 23; *Crest II*, slip op. at 23. The Attorney General of California appealed both rulings to the California Court of Appeal.

Meanwhile, the federal court litigation in this case reached judgment. In January 2022, the district court dismissed the Alliance's internal affairs claim and its equal protection challenge to SB 826's sex-based quota for failure to state a claim. The district court did not issue a written opinion explaining that decision. In May 2023, the district court then granted summary judgment to the Alliance on its challenge to AB 979, concluding that the quota for "underrepresented communities" creates a racial quota system that is per se unconstitutional, violating both the Equal Protection Clause of the U.S. Constitution and the Civil Rights Act

of 1866. *All. for Fair Bd. Recruitment v. Weber*, No. 2:21-cv-01951, 2023 WL 3481146 (E.D. Cal. May 15, 2023).

These timely cross-appeals followed, both of which the Clerk of Court stayed on July 17, 2023, citing the state-court *Crest* cases. In full, the explanation read:

> Briefing in these cross-appeals is stayed pending the appeals of the decisions in *Crest v. Padilla*, Case No. 19STCV27561 (Los Angeles Super. Ct.), and *Crest et al. v. Padilla*, Case No. 20STCV37513 (Los Angeles Super. Ct.). The parties must file a written status report by October 16, 2023[,] and every 90 days thereafter while the appeals remain pending in state court. Within 21 days after resolution of the appeals, the parties must notify the court and file a motion for appropriate relief.

ECF No. 14.

After the stays were ordered, the *Crest* cases were both also stayed in the California Court of Appeal. On August 31, 2023, the California 2nd District Court of Appeal granted the California Attorney General's motion to hold the *Crest* appeals in abeyance pending the decision of the California Supreme Court in *Taking Offense v. California*, No. S270535 (Cal. Petition for Review granted Nov. 10, 2021). *See Padilla v. Crest*, B322276 (Cal. Ct. App. Stay Order filed Aug. 31, 2023); *Padilla v. Crest*, B321726 (Cal. Ct. App. Stay Order filed Aug. 31, 2023). *Taking Offense*

does not involve SB 826, AB 979, the Equal Protection Clause of the U.S. Constitution, the Civil Rights Act of 1866, or the internal affairs doctrine. Instead, *Taking Offense* presents a question of taxpayer standing in California state courts—an issue that is relevant to whether the plaintiffs in the *Crest* litigation have standing under California law—and a First Amendment issue. Neither aspect of *Taking Offense* has any relevance here.

On November 13, the Alliance filed its motion to lift the stays in this case. ECF No. 16. The Clerk of Court denied this motion on November 30. In full, the explanation read:

> The motion to lift the stay of briefing in these cross-appeals (Docket Entry No. 16) is denied. The constitutionality of California Senate Bill 826 is presented in earlier-filed appeal Nos. 22-15149 and 22-15822. Briefing in each of those appeals is complete, and further proceedings have been stayed pending the appeal of the decision in *Crest v. Padilla*, Case No. 19STCV27561 (Los Angeles Super. Ct.).

ECF No. 19.

The two federal cases cited in that order are *Meland v. Weber*, No. 22-15149, and *NCPPR v. Weber*, No. 22-15822. *Meland* involves an appeal from the denial of the plaintiff's motion for preliminary injunction against SB 826 under the Equal Protection Clause of the U.S.

6

Constitution. *NCPPR* involves the appeal from a grant of California's motion to dismiss on the grounds that the plaintiff failed to state a claim when it argued that SB 826 violated the Equal Protection Clause of the U.S. Constitution. Neither appeal involves a challenge to AB 979 or a claim that SB 826 violates the internal affairs doctrine. And the government never argued that the cases here should be stayed pending those other federal cases. Moreover, the situation in *Meland* and *NCPPR* has shifted recently. Since the denial of our motion to lift the stay, the plaintiffs in *Meland* and *NCPPR* both have filed *their own* motions to lift the stays of their cases. *Meland*, No. 22-15149 (filed Dec. 13, 2023), ECF No. 69; *NCPPR*, No. 22-15822 (filed Dec. 13, 2023), ECF No. 70.

## ARGUMENT

Federal courts have a "virtually unflagging obligation" to "exercise the jurisdiction given to them." *Colo. River Water Conserv. Dist. v. United States*, 424 U.S. 800, 817 (1976). Accordingly, in the absence of any "exceptional" circumstances that justify abstention, this case should go forward. *Id.* at 818.

California concedes that a stay is inappropriate unless an abstention doctrine provides a basis for a stay. See ECF No. 17 at 4 (noting that

a court can stay an appeal when "exceptional circumstances exist under *Colorado River*" (cleaned up)). None applies here. Neither *Pullman* abstention nor the *Colorado River* doctrine justify a stay, and it was an abuse of this Court's discretion for the Clerk of Court to keep this case on hold for other federal cases that are stayed pending the *Crest* litigation, which is also stayed pending *Taking Offense*.

## I.   *PULLMAN* ABSTENTION DOES NOT APPLY.

The *Pullman* abstention doctrine exists to "avoid federal-court error in deciding state-law questions antecedent to federal constitutional issues." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 76 (1997). It represents "an extraordinary and narrow exception to the duty of" a federal court "to adjudicate a controversy that is properly before it." *Porter v. Jones*, 319 F.3d 483, 492 (9th Cir. 2003) (cleaned up).

Three questions guide *Pullman* abstention. First, are there "sensitive areas of social policy upon which the federal courts ought not to enter unless no alternative to its adjudication is open"? *Wolfson v. Brammer*, 616 F.3d 1045, 1066 (9th Cir. 2010) (cleaned up). Second, could "constitutional adjudication . . . be avoided by a state ruling"? *Id.* Third, is the "resolution of the state law issue . . . uncertain"? *Id.* If the answer to any

of those questions is "no," *Pullman* abstention does not apply. *See Porter*, 319 F.3d at 492. And even if all three elements are satisfied, courts retain discretion to permit the federal case to proceed. *See C-Y Dev. Co. v. City of Redlands*, 703 F.2d 375, 377 (9th Cir. 1983). Because both the first and second questions must be answered in the negative here, and an important discretionary factor also points away from abstention, *Pullman* abstention is inappropriate.

Start with the second question. The state-court proceedings that this cross-appeal is currently waiting on will not help this Court avoid constitutional adjudication. The "paradigm" example where abstention is appropriate "is a case where the challenged state statute is susceptible of a construction by the state judiciary" that would avoid any issues under the U.S. Constitution. *Kusper v. Pontikes*, 414 U.S. 51, 54 (1973). Put differently, the inquiry focuses on cases where the state court's statutory interpretation might narrow the reach of the statute. The *Crest* litigation only involves claims that the statutes violate the California constitution's guarantee of equal protection by imposing race and sex quotas without satisfying the relevant heightened scrutiny analysis employed by California state courts. Nobody argues that the state courts will construe the

statutes in a way that could eliminate or narrow the *federal* equal protection problems. The statutes are unambiguous in that regard.

And federal courts cannot pause their cases for the purpose of letting state courts take the first stab at similar constitutional analysis under similar state-constitution provisions. This Court and the Supreme Court have made that much clear. *See, e.g.*, *Hawaii Hous. Auth. v. Midkiff*, 467 U.S. 229, 237 n.4 (1984); *Pue v. Sillas*, 632 F.2d 74, 81 (9th Cir. 1980) (holding that "mirror-image state constitutional provisions do not justify abstention"). After all, for state-constitution provisions that mirror the U.S. Constitution, the interpretation of the state provision "neither logically precedes nor governs the federal question." *Pue*, 632 F.2d at 81. And "to hold that abstention is required because [the state statute] might conflict with [the state constitution's] broad and sweeping constitutional provisions, would convert abstention from an exception into a general rule." *Examining Bd. of Engineers, Architects & Surveyors v. Flores de Otero*, 426 U.S. 572, 598 (1976).

That principle rules out *Pullman* abstention here. "The proper line appears to be that abstention is in order if the case may turn on the interpretation of some specialized state constitutional provision, but not if

10

the state provision is substantially similar to the federal provision that is the basis of the federal challenge." 17A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 4242 (3d ed.). The *Crest* litigation falls squarely in the second category, which cannot justify abstention. This Court has applied this rule to a nearly identical situation, holding that a federal court may not abstain under *Pullman* to await the outcome of a state court case that turned on the application of California's Due Process Clause. *See Pue*, 632 F.2d at 79–81. The only difference here is that the state cases involve California's equal protection guarantees.

The answer to the first question—whether the case raises sensitive questions of social policy that federal courts should avoid—also independently precludes abstention. A facial challenge under federal civil rights law is a case that federal courts should seek to resolve, not one that they should try to avoid. Though there is no *per se* rule that civil rights claims must be heard, this Court has rightly explained that "[f]ederal courts should be reluctant to abstain in civil rights cases." *Pearl Inv. Co. v. City and Cnty. of San Francisco*, 774 F.2d 1460, 1463 (9th Cir. 1985); *see also C-Y Dev. Co.*, 703 F.2d at 381. That is especially so when, as here, the state is engaging in the most flagrant of violations—imposing

11

race and sex quotas. This "impairment of the fundamental civil rights of a broad class of citizens" represented in the Alliance's membership militates strongly against any further delay. *Harman v. Forssenius*, 380 U.S. 528, 537 (1965).

Finally, even if the stays here could satisfy the three mandatory elements of *Pullman* abstention, the case should go forward anyway. The "delay that abstention will cause," when significant, "is a factor arguing against abstention." 17A Wright & Miller, *supra*, § 4242. Given new developments since the stays were initially entered here, the risk of delay counsels strongly in favor of letting these appeals proceed. The state court cases that prompted the stay of these appeals have themselves been stayed. Vindication of the Alliance members' constitutional rights must now await the resolution of a California Supreme Court decision that lacks any relevance to their case, a California Court of Appeal decision that they are not a party to, and the eventual appeal from that decision back to the California Supreme Court. It's not hard to imagine that this could span many years.

The government has previously relied heavily on dicta from *Growe v. Emison*, 507 U.S. 25 (1993), which it said justified a stay. That is

incorrect. *Growe* addressed whether a federal court should defer "under the principles of *Scott v. Germano*" to a state proceeding that was entertaining various challenges to state legislative districts. *Id.* at 32. "*Germano* deferral," the Court explained, is an abstention doctrine that "recognizes that federal courts should not prematurely involve themselves in redistricting." *Id.* at 32 n.1. But this is not a redistricting case, and as courts and commentators have recognized, the *Germano* doctrine "is so far out of the mainstream of usual litigation that it sheds no light on cases other than those involving reapportionment." 17A Wright & Miller, *supra*, § 4247.

The one sentence of dicta about *Pullman* abstention in *Growe*—that the doctrine exists to limit federal adjudication of a constitutional issue that "will be mooted or presented in a different posture following conclusion of the state-court case," *Growe*, 507 U.S. at 32—is merely a shorthand description of part of the doctrine's purpose. *Growe*'s dictum did not purport to overrule prior Supreme Court precedent, which this Court has uniformly followed in its post-*Growe* decisions. *See Wolfson*, 616 F.3d at 1066 (holding that "*Pullman* abstention is appropriate only where" all three factors are met); *Porter*, 319 F.3d at 492 (same); *see also Almodovar*

*v. Reiner*, 832 F.2d 1138, 1140 (9th Cir. 1987) (requiring "each of [the three] elements [to be] present" before abstaining even though a related case was already pending at California Supreme Court).

Accordingly, *Pullman* abstention provides no basis for deferring this case for the *Crest* litigation in state court.

## II.   THE *COLORADO RIVER* DOCTRINE DOES NOT APPLY.

The *Colorado River* doctrine provides a limited exception to the general rule that "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court." *Colo. River*, 424 U.S. at 817. This narrow doctrine rests on "considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Id.* (cleaned up). To determine whether a *Colorado River* stay is justified, the court must weigh and balance eight different factors. *Ernest Bock, LLC v. Steelman*, 76 F.4th 827, 836 (9th Cir. 2023) (listing the factors).

But crucially, a "threshold requirement" for staying a case under *Colorado River* is that the federal case and the state case must be "parallel." *Id.* at 838. This follows from the Supreme Court's instruction that "it would be a serious abuse of discretion to grant the stay" if the "parallel

14

state-court litigation" cannot be an "adequate vehicle for the complete and prompt resolution of the issues between the parties." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983). Though this does not require the two cases to share an "exact parallelism," they must be similar enough that by letting the state case go forward, the federal court "will have nothing further to do in resolving any substantive part of the case." *Ernest Bock*, 76 F.4th at 838 (quoting *Moses H. Cone*, 460 U.S. at 28).

This Court has recently explained that a federal case is not parallel to a state case "when the state court proceedings will fully resolve the federal case *only if* the state court rules in one of two ways." *Ernest Bock*, 76 F.4th at 838; *see id.* at 841. Even "'substantial doubt'" about whether the federal case will need to continue after the state case reaches an answer "*precludes* a stay." *Id.* at 839. And in that circumstance, it makes no difference if the other factors point toward a stay. *Id.* at 842.[1]

That principle rules out a *Colorado River* stay here. The *Crest* litigation could resolve these cases only if its final judgment after all appeals

---

[1] Some decisions predating *Ernest Bock* "could be read as suggesting that a *Colorado River* stay may issue even if parallel state proceedings may

*(footnote continued on next page)*

universally enjoins the state of California from enforcing SB 826 and AB 979 in their entirety. Any other outcome would mean that the *Crest* litigation failed to resolve the Alliance's claims, because the Alliance would still have an opportunity to pursue its federal constitutional and statutory claims.

A less-than-adequate result is also quite plausible. After all, the *Crest* litigation is stayed while the California courts consider standing requirements under state law in an entirely separate case, which in turn might require dismissing the *Crest* litigation for lack of state-law standing as well. The state court litigation here is therefore not an "adequate

---

not fully resolve a federal case." *Ernest Bock*, 76 F.4th at 839–40. But, as this Court has explained, these cases are not good law because there is "another line of cases" in this Circuit that is more "consistent with the Supreme Court's instruction in *Moses Cone* that 'it would be a serious abuse of discretion to grant a *Colorado River* stay' if there is 'any substantial doubt' as to whether 'parallel state-court litigation will be an adequate vehicle for the *complete* and prompt resolution of the issues between the parties.'" *Id.* at 841 (quoting *Moses H. Cone*, 460 U.S. at 28 (cleaned up)).

vehicle for the complete and prompt resolution of the issues between the parties" to this case. *Moses H. Cone*, 460 U.S. at 28.

### III. THIS COURT'S INHERENT DOCKET-MANAGEMENT AUTHORITY DOES NOT JUSTIFY A STAY.

The Supreme Court noted in *Landis v. North American Co.* that "inherent in every court" is the power "to control the disposition of the causes on its docket with economy of time and effort." 299 U.S. 248, 254 (1936). But this power has limits. If a federal court is staying a federal case for state court litigation, the "proper analysis is under *Colorado River*" or *Pullman*, "not *Landis*." *Ernest Bock*, 76 F.4th at 842 (cleaned up). That makes perfect sense, as expanding "the scope of permissible stays beyond" what the more specific doctrines permit "would undermine" those doctrines. *Id.* (cleaned up).

Even if the Clerk of Court's order could be characterized as staying these cases pending the stays of other *federal* cases, *Landis* cannot justify stays here. For one thing, the government never asked for such a stay, and the government defended the stays only as justified by *Colorado River* and *Pullman*. *See* ECF No. 17 at 3–4, 5–7. Moreover, before issuing a *Landis* stay, the Court must weigh at least these three non-exclusive factors: "(1) the possible damage which may result from the granting of a

17

stay; (2) the hardship or inequity which a party may suffer in being required to go forward; and (3) the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law." *Ernest Bock*, 76 F.4th at 842 (cleaned up). The Clerk's order never addressed these factors, and none support extending the stay here:

First, the possible damage that can result from a stay is immense. This Court has made clear that even when multiple cases present similar issues, a stay is improper if it would cause a delay "potentially for years." *Yong v. INS*, 208 F.3d 1116, 1120 (9th Cir. 2000). That is the case here. If the California courts in the *Crest* litigation lift or even narrow the injunction, members of the Alliance will suffer unconstitutional discrimination throughout the adjudication of *Meland* and *NCPPR*, all in hopes of eventually getting the Alliance's own case back to the district court so that their discrimination can be stopped. All this delay ensures that no federal case reaches judgment before the *Crest* litigation, even though there is no legitimate basis for staying a federal case for that litigation, as explained above.

Second, whatever alleged inconvenience lifting a stay creates for California cannot outweigh the harm to the Alliance of a years-long delay.

18

The "significant burdens" the stay imposes on the Alliance "are not out-weighed" just because the stay will "reduce the number of cases that [California] is required to litigate." *Yong*, 208 F.3d at 1121.

Third, staying these cases doesn't advance the orderly course of justice. Neither *Meland* nor *NCPPR* addresses the constitutionality of AB 979. Waiting for the stays to be lifted in *Meland* and *NCPPR* doesn't simplify anything for this Court on that issue, it merely kicks the can down the road. Neither *Meland* nor *NCPPR* includes the separate claim that SB 826 violates the internal affairs doctrine. And even if a stay of these cases could reduce the burden on this Court, "case management standing alone is not necessarily a sufficient ground to stay proceedings." *Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007). Finally, if the Alliance's cases are only stayed because *Meland* and *NCPPR* are stayed, that rationale may not hold for much longer. The plaintiffs in those cases have filed their own motions to lift the stays in those cases, as discussed above, and the rationale of the Clerk's order here has no relevance in those cases.

At the end of the day, a "stay should not be granted unless it appears likely the other proceedings will be concluded within a reasonable

time in relation to the urgency of the claims presented to the court."
*Leyva v. Certified Grocers of Cal.*, 593 F.2d 857, 864 (9th Cir. 1979). Given
the urgency of the Alliance's civil rights claims and the likelihood of a
years-long delay while they wait for the resolution of a series of state and
federal cases, a stay cannot be justified under *Landis*.

## CONCLUSION

None of the doctrines that could justify staying these cross appeals
applies in these circumstances. As a result, this Court should lift its stays
and permit these appeals to go forward.

December 14, 2023

Respectfully submitted,

/s/ Michael Buschbacher
Jonathan Berry
R. Trent McCotter
Michael Buschbacher
  *Counsel of Record*
Andrew Smith
BOYDEN GRAY PLLC
801 17th Street NW, Suite 350
Washington, DC 20006
202-955-0620
mbuschbacher@boydengray.com
*Counsel for Alliance for Fair
Board Recruitment*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 27(d)(2) because it contains 4,093 words, excluding the portions exempted by Rule 27(a)(2)(B).

This brief complies with the typeface and type style requirements of Federal Rule of Appellate Procedure Rule 32(a)(5)–(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook and 14-point font.

December 14, 2023

/s/ Michael Buschbacher
BOYDEN GRAY PLLC
801 17th Street NW, Suite 350
Washington, DC 20006
202-955-0620

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that all counsel of record who have consented to electronic service are being served today with a copy of this document via the Court's CM/ECF. All parties in this case are represented by counsel consenting to electronic service.

December 14, 2023

/s/ Michael Buschbacher
BOYDEN GRAY PLLC
801 17th Street NW, Suite 350
Washington, DC 20006
202-955-0620